Ina May NICHOLS, Appellant,

v.

Catherine D. MUSGRAVE et al., Appellees.

No. 6836.

Court of Civil Appeals of Texas.

Texarkana.

Nov. 10, 1955.

Rehearing Denied Jan. 5, 1956.

Wm. V. Brown, Jr., Brown & Brown, Texarkana, for appellant.

Robert S. Vance, Atchley, Vance & Hubbard, Texarkana, for appellees.

HALL, Justice.

This action for damages under the guest statute, Vernon's Ann.Civ.St. art. 6701b, by Buell M. Nichols against Catherine D. Musgrave, a feme sole, and W. Y. Musgrave for damages alleged to have been suffered by plaintiff, appellant, in consequence of a wreck of a car in which appellant and his wife were riding as the guests of appellee W. Y. Musgrave and his wife. Trial was to a jury upon special issues and resulted in a verdict favorable to appellees, upon which the trial court rendered judgment for appellee W. Y. Musgrave.

Catherine D. Musgrave, the owner of the car, was not present in the car at the time of the wreck and on that account was dismissed from the cause. Upon suggestion of the death of Buell M. Nichols, husband of Ina May Nichols, this appeal is prosecuted by Ina May Nichols, a feme sole, on her own behalf.

Appellant brings forward four points of error. The first point asserts that there was "no evidence of probative force" to support a finding that a sudden gust of wind was the sole proximate cause of the accident; and Point 2, "the finding that the gust of wind was the sole proximate cause of the injuries is so preponderantly against the weight of the evidence as to amount to prejudice of the jury."

The facts are that on or about September 12, 1951, Buell M. Nichols and his wife of Nampa, Idaho, were visiting in the home of their uncle and aunt, Mr. and Mrs. W. Y. Musgrave in Nash, Texas. On or about the above date appellee Musgrave and his wife took appellant and his wife in Catherine Musgrave's automobile on a sight-seeing trip to the town of Vivian, Louisiana. They traveled the highway by the Texarkana Dam, through Atlanta, Texas, to Vivian, where the Nichols mailed some cards to their friends in Nampa, Idaho. It began to rain while they were in Vivian and on their return intermittent rain fell on them from Vivian to the Texarkana Dam. Appellee Musgrave was driving the car and seated by him was his wife; on the rear seat were Nichols and his wife. They were traveling on U. S. Highway 59 until they reached a farm-to-market road, No. 989, known as the T & P Dump road, where it left highway 59 to the left. There is evidence that when the party reached the old T & P Dump road appellee Musgrave was driving at such speed or that the rain was coming down in such torrents that he passed the entrance to that road and was forced to back up so as to turn into it. The T & P Dump road ran in a northerly direction to appellee's home. The T & P Dump road is a black-topped road and crosses at right angles U. S. Highway 67 leading west to Texarkana and proceeds north to Nash, Texas, appellee's home. The facts show that it was raining rather hard after the car turned into the T & P Dump road to the place of the accident, and there was quite a bit of wind blowing at the time. The speed of the car is variously estimated at from 55 to near 70 miles per hour at some parts of the road. It is, we think, without dispute that the car was traveling between 55 and 60 miles per hour at the time of the wreck. The wreck occurred about half a mile on the T & P Dump road north of U. S. Highway 67. Appellant testified that she felt the back end of the car skid. She also testified that at the time of the wreck there was a hard wind blowing. Appellee Musgrave, who was the driver of the car, testified in answer to a question by appellant's attorney: "Well, at that particular place, to get right to where the accident happened—I have driven all my life with automobiles, and if you asked a question if that car skidded it absolutely did not skid one fraction. To me it was as it was described by Mr. Nichols the next day; he stated it seemed to him that that car was absolutely floating in the air at the time. It swerved around like a twister had picked the car up and spun it around. That car didn't shimmy one bit. And when it made its plunge to the left I heard my wife say, 'Oh!' and just that quick that car hit the ditch, and all I could hear was plenty of rattling. I know I didn't get on the other

side of the road because there was no evidence of it."

With respect to the violence of the wind at the time of the wreck Mrs. Nichols testified:

"Q. Was the wind blowing very hard at the time these remarks were made? (This question refers to certain remarks alleged to have been made by appellant as to why he was driving so fast on the day of the accident.) A. Well, there was quite a bit of wind along with the rains.

"Q. Is that all along the T. P. Dump road? A. Yes.

"Q. I will ask you whether or not the wind was blowing any harder at the time that the car went off the road than it was at any other time? A. Well, it could have blown a little harder at that time, but this happened so suddenly that it is hard to say whether it was blowing harder at that time, it was raining so hard."

She testified further that the road was slippery and wet.

█ Based upon the above testimony the trial court submitted Special Issues Nos. 6 and 7 to the jury, asking if at the time of the accident the car was struck by a sudden gust or gale of wind, to which the jury answered "Yes." By Special Issue No. 7 the court inquired of the jury whether the sudden gust or gale of wind described in Special Issue No. 6 was not the sole proximate cause of the accident in question. The jury answered, "It was the sole proximate cause." We have reached the conclusion that there is evidence in the record to support the above issues. While it is true the evidence is not of the strongest character, it is in the record from the appellee, the driver of the car, and from his testimony an expression from Buell M. Nichols to the effect that "it seemed to him that the car was absolutely floating in the air at the time. It swerved around like a twister had picked the car up and spun it around." This testimony taken with the testimony of

appellant that there was quite a bit of wind blowing along with the rains and that the wind could have been blowing a little harder at the time of the accident, considered in connection with the statement of the appellee that the car "absolutely did not skid one fraction and didn't shimmy a bit" and that he "didn't get on the other side of the road because there was no evidence of it," in our opinion, is sufficient to support the jury's finding that the sudden gust of wind was the sole proximate cause of the wreck.

We are not unmindful of the holding in the cases cited by appellant with respect to the sufficiency of the evidence to support a jury verdict and we agree with the holding of those cases. In every case where a question of no evidence or insufficient evidence is raised it is governed by the testimony in that case. The case of Continental Casualty Co. v. Fountain, Tex.Civ.App., 257 S.W.2d 338, writ refused, simply holds that one presumption or inference cannot be piled upon another, and if the probative force of the evidence is so weak that it only raises a mere suspicion or surmise of existence of facts sought to be established it is insufficient to support a judgment. We have no such question here. The testimony is direct that the car seemed to float in the air and acted like a twister hit it, and there was no evidence that the car had skidded on the road. It must be remembered that the jury, although finding that the defendant operated the car at an excessive rate of speed under the conditions then existing at the time of the wreck, and that such action "was done in heedless and reckless disregard of the rights of others, including plaintiffs Buell M. Nichols and Ida Mae Nichols," refused to find further that such action was a "proximate cause of the injury." These points are overruled.

█ Points 3 and 4 assert that there was an irreconcilable conflict in the jury's verdict in that the jury found in one instance that appellee was guilty of gross negligence, and in answer to another issue that the injuries suffered by Buell M. Nichols was the result of an unavoidable accident. As heretofore pointed out, the jury in answer to Issues Nos. 1 and 2, found that ap-

pellee was guilty of gross negligence, but found it was not a proximate cause of the injury. From the verdict as a whole, it is easy to conclude from the evidence the jury believed, as they stated in their verdict, that the sudden gust or gale of wind which seemed to take the car up and turn it around like a twister had picked it up was the sole proximate cause of the wreck; and that the wreck was not attributable to any negligence, gross or otherwise, that had theretofore been found against appellee. The jury found further that the wreck was the result of an unavoidable accident. If, as the jury found, the sudden gale or gust of wind was the sole proximate cause of the car wreck, then certainly it was an unavoidable accident. For the answers to special issues to be in fatal conflict, "the court must consider each of the answers claimed to be in conflict, disregarding the alleged conflicting answer but taking into consideration all of the rest of the verdict, and if, so considered, one of the answers would require a judgment in favor of the plaintiff and the other would require a judgment in favor of the defendant, then the answers are fatally in conflict. It is essential that the party seeking to set aside a verdict on the ground of conflict must be able to point out that one of the conflicting answers of the jury, in connection with the rest of the verdict except the issue with which it conflicts, necessarily requires the entry of a judgment different from that which the court has entered." Little Rock Furniture Mfg. Co. v. Dunn, 148 Tex. 197, 222 S.W.2d 985, 991.

Under the verdict of the jury no judgment could have been entered for Buell M. Nichols. There is no finding in his favor except that with respect to damages, and there could be no conflict in the answers of the jury under the rule set out by the Supreme Court in the case cited next above. Christopherson v. Whittlesey, Tex.Civ.App., 197 S.W.2d 384; Hankins v. Harlan, Tex. Civ.App., 114 S.W.2d 588, cited by appellant are not in point. The third and fourth points are overruled.

Finding no error in the record, the judgment of the trial court is affirmed.